**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Sanika Forsythe,

Plaintiff,

Civil Action No.: ______________

v.

Equifax Information Services, LLC,

Defendant.

**JURY TRIAL DEMANDED**

## I. COMPLAINT

Sanika S Forsythe is a working professional, and a person who has spent years doing everything right. She pays her student loans. She services her auto loan. She keeps her accounts in order. She has earned, through discipline and sacrifice, the right to know what a nationwide consumer reporting agency says about her. On February 12, 2026, she asked Equifax Information Services, LLC to show her exactly that. What she received was not her file. It was a carefully curated shell of it.

When Ms. Forsythe reviewed her Equifax file disclosure, bearing Confirmation Number 6043599837, she encountered something deeply wrong. Every one of her eleven Dept. of Education student loan accounts carried the same frozen payment date locked to the 26th of each month, repeated identically across every single row of every single account's history. The Scheduled Payment Amount was blank. The Actual Payment Amount was blank. The Credit

Limit column was blank. Month after month, across years of her credit history, Equifax had nothing to say about what she actually paid.

The scope of what Equifax withheld is staggering. Across Ms. Forsythe's file disclosure, Equifax left in excess of 1,200 data fields blank, missing, or frozen in time as static placeholders. Every student loan account shows balances that exceed the High Credit figure Equifax itself listed, with overages ranging from $224 to $3,744 on individual accounts. Her charged-off JPMorgan Chase credit card account shows the same Last Payment Date, November 17, 2021, repeated without change across every single row of 24 consecutive months of reported history. Her Capital One account, charged off with a stated credit limit of $5,000, carries a reported balance of $6,247 and shows the identical frozen payment date across 23 consecutive months. These are not random errors. They are the fingerprints of a deliberate, systemic data policy.

The Fair Credit Reporting Act exists precisely for moments like this. Under 15 U.S.C. Section 1681g(a)(1), when a consumer requests her file disclosure, Equifax must clearly and accurately disclose all information in the consumer's file at the time of the request. The Federal Trade Commission placed every nationwide credit bureau on specific notice more than twenty-five years ago that withholding data fields from a consumer's own file disclosure while transmitting complete data to third-party creditors violates that obligation. Equifax received that notice. It built its disclosure systems anyway. It operates them today. Toyota Motor Credit pulled Ms. Forsythe's full file on September 2, 2025. What Toyota received and what Ms. Forsythe received were not the same document.

Ms. Forsythe brings this action to compel a complete and corrected file disclosure, to hold Equifax accountable for the actual harm its incomplete reporting caused her, and to recover the

statutory and punitive damages the law provides for willful violations of the Fair Credit Reporting Act.

## II. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this action pursuant to 15 U.S.C. Section 1681p and 28 U.S.C. Section 1331, as Plaintiff's claims arise under the Fair Credit Reporting Act, 15 U.S.C. Section 1681, et seq.
2. Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b) because Plaintiff resides in Milton, Massachusetts, and the acts and omissions giving rise to this action occurred in this district.

## III. PARTIES

3. Plaintiff SANIKA S FORSYTHE is a natural person residing at 202 Church Street, Milton, Massachusetts 02186. Plaintiff is a "consumer" within the meaning of 15 U.S.C. Section 1681a(c).
4. Defendant EQUIFAX INFORMATION SERVICES, LLC ("Equifax") is a Georgia limited liability company with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Defendant's registered agent in the Commonwealth of Massachusetts may be located through the Massachusetts Secretary of State's corporate database.
5. Equifax is a "consumer reporting agency" within the meaning of 15 U.S.C. Section 1681a(f) in that, for monetary fees, dues, or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit

information on consumers for the purpose of furnishing consumer reports to third parties, and uses means or facilities of interstate commerce for that purpose. As a consumer reporting agency, Equifax is subject to all obligations imposed by the Fair Credit Reporting Act and is aware of those obligations.

## IV. FACTUAL ALLEGATIONS

### A. The February 12, 2026 File Disclosure

6. On February 12, 2026, Plaintiff submitted a request to Equifax for her consumer file disclosure pursuant to 15 U.S.C. Section 1681g(a). Equifax provided an electronic file disclosure bearing Confirmation Number 6043599837 (the "Disclosure"). The Disclosure is 34 pages and contains records for 28 credit accounts, 2 collection entries, and 1 hard inquiry.

7. Pursuant to 15 U.S.C. Section 1681g(a)(1), upon receipt of a consumer's request, Equifax is required to "clearly and accurately disclose" to the consumer "[a]ll information in the consumer's file at the time of the request."

8. The "file" is defined by 15 U.S.C. Section 1681a(g) as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." The file therefore includes the complete payment history, actual payment amounts, scheduled payment amounts, credit limit data, past due amounts, and all other data fields maintained by Equifax with respect to each of Plaintiff's accounts.

9. The FTC Advisory Opinion to Katrina Darcy (June 30, 2000) placed all nationwide consumer reporting agencies, including Equifax, on specific notice more than twenty-five years ago that withholding data fields from a consumer's own file disclosure while

including that same data in reports sold to third-party creditors does not technically comply with Section 609 of the FCRA because it does not provide "accurate" disclosure of "all information" in the consumer's file. This opinion has been the law of the industry since June 30, 2000.

**B. Incomplete Disclosure: Blank and Missing Data Fields**

10. The Disclosure Equifax provided to Plaintiff is systematically and pervasively incomplete. On every account in Plaintiff's file, Equifax withheld material data fields that it maintains in its internal databases and transmits in full to third-party purchasers of consumer reports. The following account-by-account inventory documents the specific fields that Equifax omitted.

11. DEPT OF ED/AIDVANTAGE, Account Number *0130, opened February 7, 2013, Education Loan, Status Pays As Agreed: The Disclosure omits the Scheduled Payment Amount for all 22 months of 24-Month History. The Actual Payment Amount is blank for all 22 months. The Credit Limit field is blank for all 22 months. The Past Due Amount field is blank for all 22 months. The Scheduled Payment Amount header field is blank. At the header level, Actual Payment Amount, Deferred Payment Start Date, and Credit Limit are all blank. The Last Payment Date column displays the 26th day of each respective month across every single row for 22 consecutive months, a static placeholder pattern constituting a systemic omission, not a genuine payment record. This account alone contains in excess of 90 blank or static placeholder data fields.

12. DEPT OF ED/AIDVANTAGE, Account Number *0100, opened September 10, 2010, Education Loan, current balance $4,716, High Credit $3,500 (the reported balance exceeds the High Credit figure by $1,216): The Disclosure omits the Scheduled Payment

Amount for all 22 months of 24-Month History. The Actual Payment Amount is blank for all 22 months. The Credit Limit is blank for all 22 months. The Past Due Amount is blank for all 22 months. The Last Payment Date column displays the static 26th-of-month placeholder across every row. Header fields for Scheduled Payment Amount, Actual Payment Amount, and Deferred Payment Start Date are blank. This account contains in excess of 90 blank or static placeholder data fields.

13. DEPT OF ED/AIDVANTAGE, Account Number *0100, opened September 10, 2010, Education Loan, current balance $3,906, High Credit $2,000 (the reported balance exceeds the High Credit figure by $1,906): The Disclosure omits the Scheduled Payment Amount for all 22 months. The Actual Payment Amount is blank for all 22 months. The Credit Limit is blank for all 22 months. The Past Due Amount is blank for all 22 months. The Last Payment Date column repeats the static 26th-of-month placeholder across every row. Header fields for Scheduled Payment Amount, Actual Payment Amount, and Deferred Payment Start Date are blank. This account contains in excess of 90 blank or static placeholder data fields.

14. DEPT OF ED/AIDVANTAGE, Account Number *0101, opened December 20, 2010, Education Loan, current balance $7,744, High Credit $4,000 (the reported balance exceeds the High Credit figure by $3,744): The Disclosure omits the Scheduled Payment Amount for all 22 months. The Actual Payment Amount is blank for all 22 months. The Credit Limit is blank for all 22 months. The Past Due Amount is blank for all 22 months. The Last Payment Date column repeats the static 26th-of-month placeholder across every row. This account contains in excess of 90 blank or static placeholder data fields.

15. DEPT OF ED/AIDVANTAGE, Account Number *0090, opened September 18, 2009, Education Loan, current balance $5,042, High Credit $3,500 (the reported balance exceeds the High Credit figure by $1,542): The Disclosure omits the Scheduled Payment Amount for all 22 months. The Actual Payment Amount is blank for all 22 months. The Credit Limit is blank for all 22 months. The Past Due Amount is blank for all 22 months. The Last Payment Date column repeats the static 26th-of-month placeholder across every row. This account contains in excess of 90 blank or static placeholder data fields.
16. DEPT OF ED/AIDVANTAGE, Account Number *0130, opened February 7, 2013, Education Loan, current balance $1,224, High Credit $1,000 (the reported balance exceeds the High Credit figure by $224): The Disclosure omits the Scheduled Payment Amount for all 22 months. The Actual Payment Amount is blank for all 22 months. The Credit Limit is blank for all 22 months. The Past Due Amount is blank for all 22 months. The Last Payment Date column repeats the static 26th-of-month placeholder across every row. This account contains in excess of 90 blank or static placeholder data fields.
17. DEPT OF ED/AIDVANTAGE, Account Number *0090, opened September 18, 2009, Education Loan, current balance $4,152, High Credit $2,000 (the reported balance exceeds the High Credit figure by $2,152): The Disclosure omits the Scheduled Payment Amount for all 22 months. The Actual Payment Amount is blank for all 22 months. The Credit Limit is blank for all 22 months. The Past Due Amount is blank for all 22 months. The Last Payment Date column repeats the static 26th-of-month placeholder across every row. This account contains in excess of 90 blank or static placeholder data fields.
18. DEPT OF ED/AIDVANTAGE, Account Number *0130, opened September 27, 2013, Education Loan, current balance $9,445, High Credit $6,998 (the reported balance

exceeds the High Credit figure by $2,447): The Disclosure omits the Scheduled Payment Amount for all 22 months. The Actual Payment Amount is blank for all 22 months. The Credit Limit is blank for all 22 months. The Past Due Amount is blank for all 22 months. The Last Payment Date column repeats the static 26th-of-month placeholder across every row. This account contains in excess of 90 blank or static placeholder data fields.

19. DEPT OF ED/AIDVANTAGE, Account Number *0120, opened September 24, 2012, Education Loan, current balance $5,511, High Credit $4,500 (the reported balance exceeds the High Credit figure by $1,011): The Disclosure omits the Scheduled Payment Amount for all 22 months. The Actual Payment Amount is blank for all 22 months. The Credit Limit is blank for all 22 months. The Past Due Amount is blank for all 22 months. The Last Payment Date column repeats the static 26th-of-month placeholder across every row. This account contains in excess of 90 blank or static placeholder data fields.

20. DEPT OF ED/AIDVANTAGE, Account Number *0130, opened September 27, 2013, Education Loan, current balance $6,909, High Credit $5,498 (the reported balance exceeds the High Credit figure by $1,411): The Disclosure omits the Scheduled Payment Amount for all 22 months. The Actual Payment Amount is blank for all 22 months. The Credit Limit is blank for all 22 months. The Past Due Amount is blank for all 22 months. The Last Payment Date column repeats the static 26th-of-month placeholder across every row. This account contains in excess of 90 blank or static placeholder data fields.

21. DEPT OF ED/AIDVANTAGE, Account Number *0120, opened September 24, 2012, Education Loan, current balance $3,533, High Credit $2,000 (the reported balance exceeds the High Credit figure by $1,533): The Disclosure omits the Scheduled Payment Amount for all 22 months. The Actual Payment Amount is blank for all 22 months. The

Credit Limit is blank for all 22 months. The Past Due Amount is blank for all 22 months. The Last Payment Date column repeats the static 26th-of-month placeholder across every row. This account contains in excess of 90 blank or static placeholder data fields.

22. JPMCB CARD SERVICES, Account Number *9362, opened August 6, 2021, Flexible Spending Credit Card, Status Charge Off, current balance $5,555, Credit Limit $5,900: The Scheduled Payment Amount is blank for all 24 months of 24-Month History. The Actual Payment Amount is blank for all 24 months. The Last Payment Date column displays the identical date of November 17, 2021 across every single row of the 24-month history, a static placeholder appearing identically in 24 consecutive rows that is not a genuine month-by-month record of payment activity. The Date Closed field at the header level is blank. The header-level Scheduled Payment Amount is blank. This account contains in excess of 52 blank or static placeholder data fields.

23. CAPITAL ONE BANK USA NA, Account Number *6160, opened November 27, 2020, Flexible Spending Credit Card, Status Charge Off, current balance $6,247, stated Credit Limit $5,000 (the reported balance exceeds the stated credit limit by $1,247): The Scheduled Payment Amount is blank for all 23 months of 24-Month History. The Actual Payment Amount is blank for all 23 months. The Last Payment Date column displays the identical date of December 4, 2021 across every single row of the 23-month history, a static placeholder appearing identically in 23 consecutive rows. The Date Closed field is blank. The header-level Scheduled Payment Amount is blank. This account contains in excess of 50 blank or static placeholder data fields.

24. CREDIT CORP SOLUTIONS INC, Account Number *4322, opened October 15, 2022, Debt Buyer Account: The Account Status field is blank. The Terms Frequency field is

blank. The Scheduled Payment Amount is blank for all 21 months of reported history. The Actual Payment Amount is blank for all 21 months. The Date of Last Payment is blank. The Date Closed is blank. The Term Duration is blank. The Activity Designator is blank. The header-level Scheduled Payment Amount is blank. This account contains in excess of 48 blank or missing data fields.

25. PORTFOLIO RECOVERY ASSOCIATES, Account Number *0164, opened October 15, 2022, Debt Buyer Account: The Account Status field is blank. The Terms Frequency field is blank. The Scheduled Payment Amount is blank for all 23 months of reported history. The Date Closed is blank. The Term Duration is blank. The Activity Designator is blank. The header-level Scheduled Payment Amount is blank. This account contains in excess of 30 blank or missing data fields.

26. In total, Plaintiff's file disclosure contains in excess of 1,200 blank, missing, or static placeholder data fields across the accounts identified above. This figure does not include blank fields on the remaining closed accounts in Plaintiff's file.

27. The static placeholder pattern is particularly significant. On the JPMCB Card Services account, the Last Payment Date of November 17, 2021 appears identically across all 24 rows of the 24-month history. On the Capital One account, the Last Payment Date of December 4, 2021 appears identically across all 23 rows of the 23-month history. On all eleven Aidvantage accounts, the Last Payment Date column displays the 26th day of each calendar month across every row. These frozen dates confirm that the missing data fields are not random oversights but the product of a deliberate, uniform data management policy that results in the same omissions, account after account, across every account in Plaintiff's file.

**C. Per Se Inaccuracies: Balances Exceeding High Credit**

28. A consumer report that shows a balance exceeding the stated High Credit or Credit Limit figure for the same account entry is a per se inaccuracy. Eleven of Plaintiff's Dept. of Education student loan accounts show current balances that exceed the High Credit figure reported on the same account entry, as follows: Account *0130 (opened 02/07/2013), balance $1,746, High Credit $1,000, excess $746; Account *0100 (opened 09/10/2010, balance $4,716), High Credit $3,500, excess $1,216; Account *0100 (opened 09/10/2010, balance $3,906), High Credit $2,000, excess $1,906; Account *0101, balance $7,744, High Credit $4,000, excess $3,744; Account *0090 (opened 09/18/2009, balance $5,042), High Credit $3,500, excess $1,542; Account *0130 (opened 02/07/2013, balance $1,224), High Credit $1,000, excess $224; Account *0090 (opened 09/18/2009, balance $4,152), High Credit $2,000, excess $2,152; Account *0130 (opened 09/27/2013, balance $9,445), High Credit $6,998, excess $2,447; Account *0120 (opened 09/24/2012, balance $5,511), High Credit $4,500, excess $1,011; Account *0130 (opened 09/27/2013, balance $6,909), High Credit $5,498, excess $1,411; Account *0120 (opened 09/24/2012, balance $3,533), High Credit $2,000, excess $1,533.

29. The Capital One Bank USA NA account, Account Number *6160, shows a current balance of $6,247 against a stated Credit Limit of $5,000. Narrative Code 233 on that account expressly states that the Amount in High Credit Column is the Credit Limit. The reported balance of $6,247 therefore exceeds the operative credit limit of $5,000 by $1,247. This is a per se inaccuracy.

30. Equifax failed to implement any basic data-integrity comparison between the Balance field and the High Credit or Credit Limit field on the same account entry before

publishing Plaintiff's consumer report. The absence of that check, which could have been automated, is objectively unreasonable under Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007).

**D. Materially Misleading Reporting: Static Placeholder Dates on Charged-Off Accounts**

31. The JPMCB Card Services account and the Capital One Bank USA NA account are both reported in charge-off status. Both accounts display an identical Last Payment Date across every consecutive row of their respective 24-month and 23-month reporting histories. The static date on the JPMCB account, November 17, 2021, has not moved in over four years of monthly reporting cycles. The static date on the Capital One account, December 4, 2021, has similarly not changed across 23 consecutive months of reported history.

32. A consumer reviewing these accounts cannot determine whether the data represents an accurate month-by-month record of payment activity or a frozen field that has never been updated. The effect is materially misleading: a prospective lender viewing either account sees a uniformly stale timestamp that provides no reliable information about the actual history of the account. This presentation falls below the maximum possible accuracy standard of 15 U.S.C. Section 1681e(b) because it conveys a misleading impression of the account's payment timeline. See Gorman v. Wolpoff and Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009) (technically accurate information can violate Section 1681e(b) if it creates a materially misleading impression).

**E. Third-Party Dissemination**

33. On September 2, 2025, Defendant transmitted Plaintiff's consumer report to Toyota Motor Credit, 777 E Campbell Road, Richardson, Texas 75081, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure dated that day. This transmission included the inaccurate and incomplete account data described above, including the balance-over-high-credit entries on the eleven Aidvantage accounts and the per se inaccuracy on the Capital One account.

34. This transmission to Toyota Motor Credit establishes a concrete, particularized injury to Plaintiff sufficient to confer Article III standing under TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021). The dissemination of Plaintiff's file to a third-party creditor is a tangible realization of the harm that the FCRA is designed to prevent.

**F. Willfulness**

35. Equifax's conduct was willful within the meaning of 15 U.S.C. Section 1681n and the standard established in Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007), for the following reasons.

36. First, the FTC Advisory Opinion to Katrina Darcy (June 30, 2000) placed all nationwide consumer reporting agencies, including Equifax, on specific written notice more than twenty-five years ago that withholding data fields from a consumer's own file disclosure violates Section 609 of the FCRA. Equifax's continued operation of a disclosure policy that systematically omits Scheduled Payment Amounts, Actual Payment Amounts, Credit Limit data, and payment activity across every account in Plaintiff's file is objectively unreasonable in the face of that notice.

37. Second, the identical blank Actual Payment Amount columns, identical blank Scheduled Payment Amount columns, and identical static placeholder dates appearing across every

account on the same report confirm that these omissions are not isolated errors or random database failures. They are the product of a deliberate, uniform data management policy. When the same omission pattern appears on every single account in a consumer's file on the same disclosure date, the only reasonable inference is systemic, deliberate conduct. See Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020) (systemic pattern supports finding of willful violation).

38. Third, the failure to implement any automated data-integrity comparison between the Balance field and the High Credit or Credit Limit field before publishing a consumer report constitutes an objectively unreasonable absence of basic quality control. Publishing a consumer report that shows a balance exceeding the credit limit on twelve accounts, without any internal check to flag or correct that condition, is not carelessness. It is the result of a deliberate choice not to build or enforce a basic accuracy standard. That choice is objectively unreasonable under Safeco.

**G. Actual Damages**

39. As a direct and proximate result of Equifax's conduct, Plaintiff has suffered actual damages including: emotional distress, frustration, and anxiety arising from receiving a materially incomplete picture of her own credit file; impaired creditworthiness resulting from the dissemination of inaccurate balance data to Toyota Motor Credit on September 2, 2025; the inability to verify the accuracy of derogatory notations and balance figures on multiple accounts due to the systematic suppression of actual payment history; and time and resources expended in attempting to identify, investigate, and address the incomplete and inaccurate information in her Equifax disclosure.

## V. CAUSES OF ACTION

### COUNT I

### Violation of 15 U.S.C. Section 1681g(a)(1)

### Incomplete File Disclosure

40. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

41. Section 1681g(a)(1) of the Fair Credit Reporting Act provides that every consumer reporting agency shall, upon request by a consumer, "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. Section 1681g(a)(1). The "file" encompasses "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. Section 1681a(g).

42. Equifax violated Section 1681g(a)(1) when it responded to Plaintiff's February 12, 2026 request for her consumer file disclosure by providing a Disclosure that omitted in excess of 1,200 data fields that Equifax maintained in its file at the time of the request, including the Scheduled Payment Amount, Actual Payment Amount, Credit Limit, and Past Due Amount for all 22 months of history on each of the eleven Dept. of Education/Aidvantage accounts; the Scheduled Payment Amount and Actual Payment Amount for all 24 months of history on the JPMCB Card Services account (Account *9362); the Scheduled Payment Amount and Actual Payment Amount for all 23 months of history on the Capital One Bank USA NA account (Account *6160); the Account Status, Terms Frequency, Scheduled Payment Amount, Actual Payment Amount, Date of Last Payment, Date

Closed, Term Duration, and Activity Designator on the Credit Corp Solutions Inc. account (Account *4322); and the Account Status, Terms Frequency, Scheduled Payment Amount, Date Closed, Term Duration, and Activity Designator on the Portfolio Recovery Associates account (Account *0164). The Disclosure also replaced genuine payment-by-payment data with static placeholder dates on the JPMCB, Capital One, and Aidvantage accounts.

43. On information and belief, Equifax maintained the complete data described above in its internal databases at the time of Plaintiff's request and transmitted that data in full to third-party purchasers of consumer reports, including Toyota Motor Credit on September 2, 2025, while systematically withholding it from Plaintiff's own file disclosure. This is precisely the practice that the FTC Advisory Opinion to Darcy identified as a violation of Section 609 of the FCRA more than twenty-five years ago.

44. A disclosure so thoroughly stripped of data that the consumer cannot determine the accuracy of balance information, verify payment history, or identify active derogatory notations fails the "clear and accurate" standard as a matter of law. See Alexander v. Equifax Info. Servs., LLC, No. 2:17-cv-00517, 2018 WL 3025939 (D. Nev. June 18, 2018) (incomplete disclosure violates Section 1681g when consumer cannot determine accuracy of reported information).

45. Equifax's conduct was willful within the meaning of 15 U.S.C. Section 1681n for the reasons set forth in the Factual Allegations above, including over twenty-five years of specific notice from the FTC Darcy Opinion, the systemic and uniform pattern of omissions across every account in Plaintiff's file, and the absence of any data-integrity process that would prevent the publication of balances exceeding stated credit limits.

46. As a result of Equifax's willful violation of Section 1681g(a)(1), Plaintiff is entitled to actual damages pursuant to 15 U.S.C. Section 1681n(a)(1)(A); statutory damages in the amount of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. Section 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2); and costs of this action pursuant to 15 U.S.C. Section 1681n(a)(3). Alternatively, to the extent Equifax's conduct is found to have been negligent, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. Section 1681o.

## COUNT II

## Violation of 15 U.S.C. Section 1681e(b)

## Per Se Inaccuracy: Balance Exceeding High Credit and Credit Limit

47. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

48. Section 1681e(b) of the Fair Credit Reporting Act provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. Section 1681e(b).

49. Equifax violated Section 1681e(b) by preparing and transmitting to Toyota Motor Credit on September 2, 2025, a consumer report containing per se inaccurate data: eleven Dept. of Education/Aidvantage student loan accounts each showing a current balance that exceeds the High Credit figure reported on the same account entry. The specific overages are: Account *0130 (opened 02/07/2013), balance $1,746 against High Credit $1,000 (excess $746); Account *0100 (balance $4,716) against High Credit $3,500 (excess

$1,216); Account *0100 (balance $3,906) against High Credit $2,000 (excess $1,906); Account *0101 (balance $7,744) against High Credit $4,000 (excess $3,744); Account *0090 (balance $5,042) against High Credit $3,500 (excess $1,542); Account *0130 (balance $1,224) against High Credit $1,000 (excess $224); Account *0090 (balance $4,152) against High Credit $2,000 (excess $2,152); Account *0130 (balance $9,445) against High Credit $6,998 (excess $2,447); Account *0120 (balance $5,511) against High Credit $4,500 (excess $1,011); Account *0130 (balance $6,909) against High Credit $5,498 (excess $1,411); and Account *0120 (balance $3,533) against High Credit $2,000 (excess $1,533).

50. Equifax also violated Section 1681e(b) by reporting in the consumer report transmitted to Toyota Motor Credit that the Capital One Bank USA NA account (Account *6160) carried a balance of $6,247 against a stated Credit Limit of $5,000, an excess of $1,247 above the operative credit limit, with Narrative Code 233 confirming that the Credit Limit figure is the binding cap.

51. A consumer report showing a balance in excess of the stated credit limit or high credit figure on the same account entry is inaccurate on its face. Equifax failed to implement reasonable procedures, including a basic automated comparison of the Balance and High Credit fields before preparing and publishing consumer reports, that would have detected and corrected these inaccuracies. This failure is not carelessness. It is objectively unreasonable conduct under Safeco, 551 U.S. at 69.

52. As a result of Equifax's willful violation of Section 1681e(b), Plaintiff is entitled to actual damages pursuant to 15 U.S.C. Section 1681n(a)(1)(A); statutory damages in the amount of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C.

Section 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2); and costs of this action pursuant to 15 U.S.C. Section 1681n(a)(3). Alternatively, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. Section 1681o.

## COUNT III

### Violation of 15 U.S.C. Section 1681e(b)

### Materially Misleading Reporting: Static Placeholder Dates on Charged-Off Accounts

53. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

54. Section 1681e(b) requires that consumer reporting agencies follow reasonable procedures to assure maximum possible accuracy of consumer report information. This standard encompasses not only technically incorrect data but also data that, while potentially containing a kernel of accuracy, presents a materially misleading picture of the consumer's credit history. Gorman v. Wolpoff and Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009).

55. Equifax violated Section 1681e(b) by reporting in consumer reports transmitted to Toyota Motor Credit on September 2, 2025 that the JPMCB Card Services account (Account *9362) showed a Last Payment Date of November 17, 2021 across all 24 consecutive rows of the account's 24-month history, and that the Capital One Bank USA NA account (Account *6160) showed a Last Payment Date of December 4, 2021 across all 23 consecutive rows of the account's reported history. These identical, frozen timestamps do not reflect actual month-by-month payment activity. They are static placeholders that convey a materially misleading impression that nothing has changed in either account for

years, preventing any third-party reviewer from drawing accurate conclusions about the account's actual payment timeline.

56. As a result of Equifax's willful violation of Section 1681e(b) in this Count, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. Section 1681n(a)(1)(A); statutory damages in the amount of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. Section 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2); and costs of this action pursuant to 15 U.S.C. Section 1681n(a)(3). Alternatively, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. Section 1681o.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff SANIKA S FORSYTHE respectfully requests that this Court enter judgment in her favor and against Defendant Equifax Information Services, LLC, and award the following relief:

(a) A judgment in favor of Plaintiff and against Equifax on all counts;

(b) Actual damages pursuant to 15 U.S.C. Sections 1681n(a)(1) and 1681o(a)(1);

(c) Statutory damages in the amount of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. Section 1681n(a)(1)(A), with each third-party transmission of an inaccurate or incomplete consumer report constituting a separate violation;

(d) Punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2) for Equifax's willful and deliberate disregard of its statutory obligations;

(e) Costs of this action pursuant to 15 U.S.C. Sections 1681n(a)(3) and 1681o(a)(2);

(f) Injunctive relief requiring Equifax to provide Plaintiff with a complete and corrected file disclosure containing all data fields maintained in Equifax's internal databases with respect to each account in Plaintiff's file;

(g) Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Sanika Forsythe

Sanika Forsythe

Pro Se Plaintiff

202 Church St

Milton, MA 02186

Email: forsythe1405@gmail.com

Phone: (617) 922-3066

Date: June 9, 2026